EDWARD S. SMITH, Circuit Judge.
 

 This is an appeal from an order of the United States Claims Court (No. 35-83C, Mar. 21, 1984), granting appellee J.F. Shea Company, Inc. (Shea), judgment against appellant the United States (Government) for a sum representing additional interest owed Shea computed according to the variable rates set by the Secretary of the Treasury (Treasury) under law. We affirm.
 

 Issue
 

 We face only one issue: whether the Claims Court erred as a matter of law in holding that the payment of interest clause in a Government contract requires that the Government calculate the interest due Shea
 
 *339
 
 on a variable, as opposed to a fixed, rate basis.
 

 Background
 

 The parties stipulated to the pertinent facts before the trial court. For the purposes of this appeal we need only know that in 1975 Shea contracted with the Government to perform certain major construction work. That contract included a standard clause 6A of the general provisions which stated:
 

 6A. PAYMENT OF INTEREST ON CONTRACTORS’ CLAIMS
 

 (a) If an appeal is filed by the Contractor from a final decision of the Contracting Officer under the disputes clause of this contract, denying a claim arising under the contract, simple interest on the amount of the claim finally determined owed by the Government shall be payable to the Contractor. Such interest shall be at the rate determined by the Secretary of the Treasury pursuant to Public Law 92-41, 85 Stat. 97, from the date the Contractor furnishes to the Contracting Officer his written appeal under the disputes clause of this contract * *.
 

 The parties stipulated that: “No negotiation, discussion, or manifestation of intention between the parties concerning the inclusion of this clause in the contract nor as to the parties’ interpretation of the
 
 method
 
 of computation of interest under Clause 6A occurred prior to the Government’s awarding the contract or until the instant dispute arose.” (Emphasis supplied.)
 

 During the course of Shea’s performance of the construction work, Shea encountered differing site conditions for which the agency board of contract appeals in 1982 awarded Shea equitable adjustments total-ling over $4 million. The board remanded the matter to the appropriate contracting officer to calculate interest on the award. The contracting officer did so using the variable rate method, which provides for interest rates fluctuating in 6 month increments according to the Treasury rate pursuant to Public Law 92-41, 85 Stat. 97, as set forth in clause 6A above.
 

 Two months later the Government notified Shea that it had overpaid Shea the interest due it by more than a half million dollars. The Government stated that it had erred in using the variable rate method of computation and should have used the fixed rate
 
 approach
 
 — i.e., application of the same interest rate throughout the pendency of the appeal as that rate in effect when the written appeal was furnished. Consequently, the Government withheld the approximately half million dollar sum from moneys due Shea under another contract, resulting in the dispute which has finally reached us.
 

 OPINION
 

 This court’s predecessor held that, under the Contract Disputes Act of 1978
 
 [1]
 
 (act), Congress intended “that the rate of interest to be applied initially will be the Treasury rate then in effect, and that this rate will rise and fall in concert with any changes in effect for subsequent six month periods.”
 
 [2]
 
 The statutory language in the act which the court interpreted in that case
 
 (Brookfield Construction Co. v. United States,
 
 228 Ct.Cl. 551, 661 F.2d 159 (1981)) is comparable to that quoted from clause 6A above.
 
 [3]
 
 However, in
 
 Brookfield,
 
 both
 
 *340
 
 parties had urged application of the variable rate method and, more importantly, in this case, it is undisputed that the interest issue depends on an interpretation of the contract clause, not the Contract Disputes Act. The parties thus agree that this case is one of first impression.
 

 The Government has strongly urged upon us the principle that, absent express consent by Congress waiving sovereign immunity, interest does not run on a claim against the United States.
 
 [4]
 
 We agree with the Government on this important point.
 
 [5]
 
 However, it is irrelevant here, where the dispute concerns not
 
 whether
 
 interest runs against the United States but
 
 how
 
 the interest is to be calculated. Had the period during Shea’s appeal been one of declining interest rates, the Government no doubt would have been all too happy to accede to the variable rate method and Shea would have been the protestant here. Had the period been one of steady or evenly fluctuating rates, use of one method over another would have resulted in a wash. Since, as it happened, the period saw interest rates rising, the Government this time has “lost” and the contractor has “won.” Of course, there really should be no “winner” or “loser” in the sense that the aim of the interest award is to compensate the contractor fairly for the cost of money necessary to finance additional or disputed work while pursuing an administrative remedy.
 
 [6]
 
 The payment of interest clause in the instant contract should, without more, be interpreted accordingly.
 

 The Government also contends that administrative practice concerning pre-act interest awards was to apply the fixed rate method, where interest was allowed. Chief Judge Kozinski of the court below thoroughly considered the administrative precedents cited, as have we, and concluded that the pattern was not so consistent.
 
 [7]
 
 For example, as regards the immediate Government agency with which Shea was dealing (the Bureau of Reclamation), the parties researched the interest rate practice. They found and stipulated that:
 

 The Bureau of Reclamation has paid interest on pre-Contract Disputes Act of 1978 contracts * * * which contain Clause 6A (Payment of Interest on Contractors’ Claims clause) in ten instances. In five instances a variable rate of interest was paid and in the other five instances a fixed rate was paid.
 

 In addition, the practice is changing among the major Government boards. In
 
 Joseph Penner,
 
 GSBCA No. 6820, 83-1 BCA ¶ 16,282 (Jan. 25,1983), the General Services Board of Contract Appeals applied
 
 Brookfield
 
 to a pre-act contract clause identical to clause 6A here at issue. Finally, we take note in this case of the initial decision of the contracting officer to award Shea interest on a variable rate basis — confirming that, to one knowledgeable in the area, the administrative practice was not so clear as the Government would now have us believe.
 

 In view of the foregoing, we hold that the trial court correctly concluded that the variable rate interest method applies under clause 6A of the contract before us and correctly awarded judgment accordingly.
 

 AFFIRMED.
 

 [1]
 

 . Pub.L. No. 95-563, 92 Stat. 2383, 41 U.S.C. §§ 601
 
 et seq.
 
 (1982).
 

 [2]
 

 .
 
 Brookfield Constr. Co. v. United States,
 
 228 Ct.Cl. 551, 661 F.2d 159, 170 (Ct.Cl.1981).
 

 [3]
 

 .
 
 Compare
 
 with CDA provision, 41 U.S.C. § 611, which reads in pertinent part:
 

 "* * * The interest provided for in this section shall be paid at the rate established by the Secretary of the Treasury pursuant to Public Law 92-41 (85 Stat. 97) for the Renegotiation Board.”
 

 The Renegotiation Act (now expired) provides
 
 inter alia
 
 that the Secretary shall determine the interest rate for successive 6-month periods, taking into consideration current private commercial rates for new loans maturing in approximately 5 years. The provisions relating to the
 
 Secretary’s determination
 
 of rates do not contain any indication whether
 
 payment
 
 of interest shall be at a fixed or variable rate. How to apply
 
 *340
 
 such rate or rates set by the Secretary must be determined in the particular context in which the rates are utilized.
 

 We also note here that the subject clause 6A references only the Secretary’s determination, not the entire statute. Thus, other provisions of the Renegotiation Act and the legislative history pertaining thereto, directing that interest be paid at
 
 a fixed rate on excess profits,
 
 are not determinative of the issue before us.
 

 [4]
 

 .
 
 See, e.g., Brookfield,
 
 661 F.2d at 165.
 

 [5]
 

 .
 
 See also Fidelity Constr. Co. v. United States,
 
 700 F.2d 1379, 1383 (Fed.Cir.),
 
 cert. denied,
 
 — U.S.-, 104 S.Ct. 97, 78 L.Ed.2d 103 (1983).
 

 [6]
 

 .
 
 See Brookfield,
 
 661 F.2d at 170. We note that our predecessor court so concluded in light of its interpretation of the act and its pertinent legislative history. The act does not apply to this case, as we have stated.
 

 [7]
 

 .
 
 But see
 
 the opposite conclusion in
 
 McCollum v. United States,
 
 6 Cl.Ct. 373 (1984).